AUSA: Robert B. Sobelman

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **25 MAG 1510** |
| UNITED STATES OF AMERICA<br><br>                    v.<br><br>NATHANEAL HENRY,<br><br>                              Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. § 371; and 21 U.S.C. § 846<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

CRISTIAN NUNEZ, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Conspiracy to Solicit and Receive a Bribe by Agent of Organization Receiving Federal Funds)

1. From at least in or about October 2023, through at least in or about June 2024, in the Southern District of New York and elsewhere, NATHANEAL HENRY, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, solicitation and receipt of a bribe by an agent of an organization receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(1)(B).

2. It was a part and an object of the conspiracy that NATHANEAL HENRY, the defendant, being an agent of a local government, and an agency thereof, to wit, the New York City Department of Correction ("DOC"), which received, in the calendar years 2023 and 2024, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, would and did corruptly solicit and demand for the benefit of a person, and accept and agree to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the DOC involving a thing of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(1)(B), to wit, HENRY, a DOC employee, agreed with others to and did bring prison contraband into a DOC facility in exchange for a total of at least approximately $5,000 in bribes.

Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, was committed or caused to be committed in the Southern District of New York and elsewhere:

    a. On or about October 3, 2023, NATHANEAL HENRY, the defendant, received a bribe payment of approximately $1,500 via Cash App.

   b. On or about April 20, 2024, HENRY smuggled marijuana into a DOC facility located on Rikers Island in the Bronx, New York, in exchange for a bribe payment.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Distribute a Controlled Substance)

   4. From at least in or about October 2023, through at least in or about June 2024, in the Southern District of New York and elsewhere, NATHANEAL HENRY, the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

   5. It was a part and an object of the conspiracy that NATHANEAL HENRY, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

   6. The controlled substance involved in the offense was a quantity of mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

   7. I have been personally involved in the investigation of this matter, which has been jointly investigated by the FBI and the New York City Department of Investigation ("DOI"). This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement personnel, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

   8. NATHANEAL HENRY, the defendant, was an employee of the DOC assigned to work at the New York City jail complex on Rikers Island in the Bronx, New York. From October 2023 through June 2024, HENRY repeatedly abused his position of trust when he agreed to and did accept thousands of dollars in bribes from four different inmates and their associates in exchange for smuggling contraband, including marijuana and tobacco, into a Rikers Island facility on multiple occasions.

### DOC Rules, Regulations, and Training

   9. Based on my communications with other law enforcement personnel, my review of DOC records, and my training and experience, I have learned, among other things, the following:

    a. According to the DOC Employee Rules and Regulations, employees of DOC facilities "shall not enter into any transaction with an inmate, nor carry, convey, or make accessible to an inmate within a facility/command any intoxicant, opiate, narcotic, or other contraband article, nor traffic with an inmate in any manner." According to the DOC Inmate Handbook, "'Contraband' shall mean any item that is not sold in the commissary, that is not on the approved list of permissible items, that is possessed in more than the approved amount or, that the inmate does not have permission to possess," including, "items that may disrupt the safety, security, good order and discipline of the facility." The DOC Inmate Handbook also expressly prohibits inmates from possessing drugs, stating that inmates "shall not sell or exchange prescription drugs or non-prescription drugs." Finally, the DOC Inmate Handbook warns that "[a]ny person who tries to introduce contraband into a facility may also be subject to criminal prosecution." Based on the foregoing, as well as my training and experience and my communications with other law enforcement personnel, I know that marijuana and tobacco are considered contraband.

    b. NATHANEAL HENRY, the defendant, like all DOC employees, received training on employee rules and regulations, which prohibit employees from, among other things, entering into transactions with inmates and providing inmates with contraband.

  10. Based on my review of reports issued by the New York City Council, I have learned, among other things, that during each of the calendar years 2023 and 2024, the DOC received more than a million dollars in federal funding.

<u>HENRY Participated in a Bribery and Contraband Smuggling Scheme</u>

  11. Based on a written memorandum submitted by an employee of the New York City Department of Correction ("DOC Employee-1") and other information provided by the DOC, I have learned, among other things, that, on or about April 20, 2024, NATHANEAL HENRY, the defendant, contacted DOC Employee-1 via social media, informed her that he had left a "package" inside of the office of another DOC employee ("DOC Employee-2"), and requested that DOC Employee-1 go to work early, remove the package, and place it in another location. DOC Employee-1 declined the request and informed HENRY that the request made her uncomfortable.[1]

  12. Based on my review of a written report submitted by DOC Employee-2 and a report of an interview conducted by the DOC's Special Investigations Unit of DOC Employee-2, I have learned, among other things, that, on or about April 20, 2024, DOC Employee-2 reported to the DOC that he discovered inside of a drawer in his DOC workspace a package containing a green leafy substance concealed within certain paperwork.

  13. Based on my review of a laboratory report generated by the New York City Police Department's Controlled Substance Analysis Section, I have learned, among other things, that the aforementioned green leafy substance weighed approximately 121.6 grams and tested positive for the presence of marijuana. In addition, based on my review of photographs of the substance, and my training and experience, I know that its appearance is consistent with marijuana.

---

[1] DOC Employee-1 notified the DOC that she deleted at least one electronic message that HENRY sent to her with respect to this request.

14.  Based on my review of law enforcement reports and records, I have learned, among other things, that in or about June 6, 2024, law enforcement agents with DOI conducted an audio-recorded interview of NATHANEAL HENRY, the defendant. After HENRY was advised of and waived his *Miranda* rights, both orally and in writing, he admitted, among other things, the following:

a.  HENRY was approached by a particular inmate ("Inmate-1") at the Rose M. Singer Enhanced Supervision housing unit ("RESH") at Rikers Island and discussed the smuggling of tobacco and marijuana into that facility with Inmate-1. At the conclusion of that discussion, HENRY agreed to smuggle marijuana and tobacco into the facility in exchange for approximately $1,200. At Inmate-1's direction, HENRY subsequently met with a non-incarcerated individual ("CC-1") in Brooklyn, New York. CC-1 provided HENRY with $1,200 in cash and two vacuum-sealed packages; one contained marijuana and the other contained tobacco. HENRY later concealed the packages of marijuana and tobacco on himself in his "mid-section," smuggled them into the RESH, concealed them inside paperwork, and delivered them to Inmate-1.

b.  HENRY subsequently agreed to and did smuggle in additional contraband for Inmate-1 in exchange for approximately $720. HENRY was paid approximately $720 on Cash App. HENRY again met with CC-1 in Brooklyn, where CC-1 provided HENRY with two packages; one contained marijuana and the other contained tobacco. HENRY later concealed the packages of marijuana and tobacco on himself and smuggled them into the RESH. HENRY then concealed the package of tobacco inside paperwork and delivered it to Inmate-1. HENRY hid the package of marijuana inside of a filing cabinet and deemed it too large to be covertly delivered to Inmate-1. The next time HENRY returned to work, he learned that the package of marijuana he had hid in the filing cabinet had been found by another DOC employee.

c.  HENRY also agreed to and did smuggle in marijuana and tobacco for another inmate ("Inmate-2") at RESH in exchange for approximately $1,500. HENRY received $1,500 on Cash App from a non-incarcerated individual associated with Inmate-2 ("CC-2"). HENRY then purchased marijuana and tobacco, borrowed a vacuum sealer, and packaged the marijuana and tobacco into two separate packages. HENRY then delivered the packages of marijuana and tobacco to Inmate-2.[2]

d.  In addition, HENRY agreed to and did smuggle in marijuana, tobacco, and drug-soaked papers for another inmate ("Inmate-3") at the RESH in exchange for thousands of dollars. HENRY admitted that, at times, he received approximately $1,500 either on Cash App or in cash from a non-incarcerated individual associated with Inmate-3 ("CC-3"), who provided him with vacuum-sealed packages of marijuana, tobacco, and drug-soaked papers to smuggle into the RESH.

e.  Finally, HENRY agreed to and did smuggle in marijuana for another inmate ("Inmate-4") at the RESH in exchange for approximately $972. HENRY admitted that he accepted $972 on Cash App in exchange for smuggling into the RESH a package of marijuana and delivering it to Inmate-4.

---

[2] HENRY claimed that he was afraid that if he did not smuggle contraband for Inmate-2, then HENRY might get "shot" while sitting at the desks in the RESH.

15. Based on my participation in this investigation, I have learned, among other things, that other evidence gathered in the course of the investigation corroborates the admissions that NATHANEAL HENRY, the defendant, made during the interview, including, among other things, the following:

   a. Based on my review of records from Block Inc. ("Block"), information received from a representative at Block, and publicly available information, I have learned, in sum and substance, the following:

      i. Block operates Cash App, a mobile phone application and payment service platform. Cash App users can use their Cash App accounts to send and receive money; to transfer money to other Cash App users; to make purchases; and to send and receive money from bank accounts. When money is sent, the sender may include a descriptive note along with the transfer of money.

      ii. Cash App's data servers are located in California. Every request to process a financial transaction through Cash App passes through Cash App's data servers in California, including for example, requests by Cash App customers to (1) transfer funds from one Cash App account to another Cash App account, also known as a "peer-to-peer transaction"; or (2) transfer funds between a Cash App account and a bank account. For example, requests made within the Bronx, New York to transfer funds through a Cash App account result in an interstate wire from Bronx, New York to Cash App's data servers in California.

      iii. In or about June 2022, NATHANEAL HENRY, the defendant, created a Cash App account that is registered to his name and date of birth (the "Henry Cash App Account"), and for which, in or about September 2023, he provided to Block a government-issued photo identification card to verify his identity.

      iv. On or about October 3, 2023, the Henry Cash App Account received $1,500 from an account operated by CC-3 (who is associated with Inmate-3). The description listed by CC-3 for the transaction included the known alias for Inmate-3.

      v. From in or about March 2024 through in or about June 2024, the Henry Cash App Account engaged in at least approximately 20 completed or attempted transactions with Cash App accounts operated by (i) an individual associated with Inmate-1, (ii) CC-2 (who is associated with Inmate-2), and (iii) an individual associated with Inmate-4. Some of the transactions with CC-2 listed in the description of the transactions the known alias for Inmate-2. In addition, several of the transactions generally are consistent with the amounts HENRY admitted receiving. For example, on or about March 28, 2024, HENRY received $972 from an individual associated with Inmate-4.

      vi. In total, HENRY received at least approximately $5,000 to the Henry Cash App Account from individuals associated with Inmates-1 through -4, and requested at least approximately $5,000 of additional payments from individuals associated with those inmates that were not ultimately completed.

   b. Based on my review of surveillance video, I have learned, among other things, that on or about April 3, 2024, HENRY placed what outwardly appeared to be a thick stack

5

of paperwork under the door of Inmate-1's cell, and which barely fit under the door in light of its thickness.

      c.      Based on my review of telephone records and DOC records, I have learned, among other things, that from on or about March 29, 2024, through on or about April 23, 2024, a telephone number used by HENRY, which was subscribed to in HENRY's name and which HENRY provided to the DOC as his telephone number, communicated at least 10 times with a telephone number associated with CC-1.

    16.    Based on information provided by the DOC, I have learned, among other things, that on or about June 6, 2024, NATHANEAL HENRY, the defendant, was suspended from his position at the DOC, and on or about July 8, 2024, he resigned from that position.

    WHEREFORE, I respectfully request that a warrant be issued for the arrest of NATHANEAL HENRY, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Cristain Nunez, by SDA with permission
_____
Cristian Nunez
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 6th day of May, 2025.

_____
HON. STEWART D. AARON
United States Magistrate Judge
Southern District of New York